GEORGE B. MAGIE

*v.*

ARCHIBALD S. KIRKPATRICK.

[Decided January 12th, 1921.]

1. Where a testatrix directed that the residue of her estate, real and personal, should be divided into five parts, and disposed of fractional shares of the parts, and gave her executor an unlimited power of sale, such power is not restricted in the sale of land to a case where the personal estate is insufficient to pay debts.

2. Such power of sale is continued to new executors appointed by the testatrix after the death of the executor first appointed by her, and is to the new executors in their representative, and not in their individual capacity.

3. Where such power of sale is given to two executors, and one of them dies, the power may be exercised by the survivor.

On bill for specific performance.

*Messrs. Lum, Tamblyn & Colyer,* for the complainant.

*Messrs. Vreeland & Wilson,* for the defendant.

FIELDER. V. C.

This is a suit for the specific performance of a written agreement entered into between complainant and defendant, whereby complainant agreed to convey and defendant agreed to purchase certain lands in Morris county, in this state. The defendant's refusal to carry out the agreement is based upon alleged unmarketable title in complainant, and the question presented calls for the construction of certain clauses of the will and codicil of Elizabeth Cebra Baker, admitted to probate in Morris county.

By the first seven clauses of her will the testatrix provided for the payment of her debts and funeral expenses and bequeathed several legacies.

The will then continues:

"*Eighth:* The residue of my estate, I do order and direct to be divided into five equal parts; three parts or three-fifths thereof, I give and bequeath unto my said sister, Mary Frances Davis, two parts or two-fifths thereof. I give and bequeath unto the relatives hereinafter named of my said deceased husband, Jeremiah Baker, in manner following, that is to say, the one-fifth of said two-fifths of the residue of my estate I give to the children of James Augustus Baker, dec'd. in equal parts. Another one-fifth of said two-fifths of the residue of my estate, I give to the children of Esther Hathaway, dec'd. in equal parts. Another one-fifth of said two-fifths of the residue of my estate, I give to the child of Jane Crane, dec'd. Another one-fifth of said two-fifths of the residue of my estate I give to the children of William Baker, dec'd. in equal parts. The remaining one-fifth thereof, I give to the children of Ferdinand Baker in equal parts.

"*Lastly:* I hereby constitute my said brother, James A. Webb, executor of this my last will and testament and I do authorize and empower him to sell and convey any real estate of which I may die seized and such sales may be made publicly or privately and on such terms and conditions as he may deem expedient and I do exempt him from providing security which may be required by the laws of this or any other state for the discharge of the duties hereby imposed upon him."

By the codicil the testatrix bequeathed certain personal property to her executors in trust and the codicil continues as follows:

"Since the execution of my said will my brother, James A. Webb, whom I named executor thereof, has died. I now constitute Charles G. Davis, my nephew, and my friend, Edward P. Holden, Executors of my said will and of this codicil and I do bestow upon them all the power and authority my said will conferred upon my said brother and I do exempt the said Charles G. Davis and Edward P. Holden as executors, from giving security which may be required by the laws of this or any other state for the discharge of the duties hereby imposed upon them, or imposed upon them by said will."

By an agreed state of facts it appears that letters testamentary were granted to the two executors named in the codicil; that Charles G. Davis thereafter died; that Edward P. Holden, as surviving executor, conveyed the premises in question, which were part of the real estate of which the testatrix died seized, to complainant, and that the personal estate of decedent was more than sufficient to pay her debts, administration expenses and all legacies.

The question to determine is whether the deed of conveyance made by Edward P. Holden, as surviving executor, purporting to convey to complainant the land described in the agreement which it is now sought shall be specifically performed, vested a marketable title in complainant, and the solution of the question depends upon the extent of the power of sale conferred on such surviving executor by the will and codicil of deceased. The defendant contends, first, that the power of sale was a naked power, given to the persons named in the codicil, for the purpose of raising money by the sale of real estate, if necessary, with which to pay debts and legacies and that because the personal estate was amply sufficient to meet such charges, the power of sale could not be exercised, and second, that if the power of sale should not be so limited, it was given to the persons named as individuals, and not in their official capacity as executors, and could only be exercised by them jointly and not by the survivor of them.

The codicil in which Davis and Holden were named as executors conferred upon them all the power and authority which the will gave to Webb, the person named in the will as executor, and upon referring to the will, we find that Webb was thereby authorized and empowered to sell and convey any real estate of

which the testatrix might die seized, either publicly or privately, and on such terms and conditions as he might deem expedient. No limit was placed on such power to sell. The extent of his authority and power is expressed in plain and simple language, and it is as broad and comprehensive as the testatrix could make it. There is no intention expressed that it should be exercised only in the event that the personal estate should prove insufficient to pay debts and legacies, and since the language is not ambiguous, the safest course is to abide by the plain meaning of the words the testatrix used to express her wishes, rather than attempt to give her expressions a limited meaning which might defeat some purpose not definitely set out in her will. Immediately preceding the clause appointing her executor and authorizing and empowering a sale of her real estate is the clause disposing of her residuary estate. By this residuary clause the testatrix ordered and directed her estate to be divided into five equal parts, some of which parts she proceeded to subdivide, with the result that she gave and bequeathed fractional parts of her estate to many persons, some of whom may be minors. I can find no repugnancy between these two clauses, and if it were permissible to speculate as to what object the testatrix could have had in mind when giving an unlimited power of sale over her real estate, I would say that it was for the purpose of reducing her real estate to money to facilitate a division of her whole estate into parts, instead of vesting title to such real estate, as tenants in common, in many persons of perhaps various opinions and interests, holding different ideas of value, who could not agree to sell or divide and of whom some might be under legal disability and almost inevitably compelling a partition sale. I would also observe that the testatrix blended her personal and real estate in the residue and ordered and directed the whole "to be divided," which would indicate that the executor, who had the personal estate in his hands, was the person to allocate the equal parts, and I would further observe that nowhere in the clause disposing of her residuary does the testatrix specifically refer to her real estate, or in connection with the disposal of the equal parts, use the word "devise." But, as I have said, I do not feel at liberty to indulge in conjectures as to what

the testatrix had in mind, in the face of the explicit authority given her executor, and I therefore find that the executor named in the will was given an unlimited power of sale, and that by the terms of the codicil, the same authority and power was bestowed on the persons whom the testatrix selected to act in place of Webb, and my view, I think, is supported by the following authorities: *Brearley* v. *Brearley, 9 N. J. Eq. 21; Lippincott* v. *Lippincott, 19 N. J. Eq. 121; Bacot* v. *Wetmore, 17 N. J. Eq. 250; Wetmore* v. *Midmer, 21 N. J. Eq. 242; Haggerty* v. *Lanterman, 30 N. J. Eq. 37; Hatt* v. *Rich, 59 N. J. Eq. 492.*

The remaining question to be disposed of is whether the unlimited power and authority to sell, which I find was conferred by the terms of the will and codicil upon Charles G. Davis and Edward P. Holden, was given them as individuals, or, in their official capacity, as executors. After naming them as executors, the testatrix said: "I do bestow upon them all the power and authority my said will conferred upon my brother," and she then exempted them, as executors, from giving security for the discharge of the duties imposed upon them by the will and codicil. This was all done in one sentence, and what the defendant's contention amounts to is, that although at the beginning and at the end of the sentence she spoke of these men as executors, she, nevertheless, by the same sentence, intended to give them power to sell as individuals. I could not so construe the sentence in question without a clear expression of such intention. The testatrix's real estate was not devised to Davis and Holden in trust, and they held no title to it, but they were given authority to convey, which means to execute and deliver written evidences of transfer of title, and, therefore, and because the same sentence which named them as executors gave them the power to sell and relieved them from giving bond as executors, I must assume that the same trend of thought with which the testatrix commenced and ended her sentence continued throughout the sentence, and that the power to sell and to convey title was given them in an official capacity, rather than in an individual capacity in which she at no time clearly designated them. If, then, a power of sale under the will and codicil was in the two executors, such power

passed to and could be legally exercised by the survivor upon the death of one of them. *Comp. Stat. p. 2261 § 10; Weimar v. Fath, 43 N. J. Law 1.*

My conclusion is, that the conveyance by Edward P. Holden, as surviving executor of Elizabeth Cebra Baker, to complainant, was efficacious to pass a good and marketable title and that defendant should be decreed to perform the agreement which is the subject-matter of this suit.